# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| KEITH POWERS, | ) |
| | ) |
| Plaintiff, | ) |
| | )  Civil Action No. 3:07-CV-246 JVB |
| v. | ) |
| | ) |
| USF HOLLAND, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

In this lawsuit, Plaintiff Keith Powers alleges that his employer, Defendant USF Holland, Inc., violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et. seq.*, by enforcing a 100% healed policy, by discriminating against him when he became disabled as a result of a back injury, and by failing to provide him with reasonable accommodations. Plaintiff also brings state law claims of negligent infliction of emotional distress and retaliatory discharge. Defendant moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). In responding to the motion, Plaintiff has created an issue of fact as to whether Defendant maintained a 100% healed policy, but he has failed on the remainder of the ADA claims. Plaintiff's state claims fail as well. Accordingly, Defendant's motion is granted in part and denied in part.

**A. Facts**

Defendant is a freight transportation company and operates terminals throughout the United States, including one in South Bend, Indiana. Defendant is an employer pursuant to Title VII of the Civil Rights Act of 1964, as amended, and pursuant to 42 U.S.C. § 12111(5)(A).

Plaintiff began his employment with Defendant as a truck driver at the South Bend Terminal in the spring of 1999. There are two types of truck driver classifications at the South Bend terminal: road drivers and city drivers. City drivers remain within a one-hundred mile radius of the South Bend terminal and also perform dock work. Dock work involves loading freight into and out of the trucks with a forklift. Road drivers also load freight with forklifts, but they drive longer distances across interstate lines.

On January 19, 2002, Plaintiff drove a company truck over a rough patch of road on Interstate 90 and injured his back. Plaintiff experienced pain in his spine, and numbness and tingling in his right leg. Plaintiff sought treatment in a hospital emergency room. Plaintiff's physicians gave various diagnoses including bulging, herniated discs, and an associated annular fissure at the L5-S1 level of his lumbar spine. Plaintiff reported his injury to Defendant and filed a claim for worker's compensation benefits, which he received. A record written by worker's compensation case manager Ray Ananea states that the "loss is compensable—Employer does not question back injury. . . . Emplyr [sic] states this is a common description they see." (DE 64, Ex. 35, at D0168). Defendant classified Plaintiff's status as off work due to a work-related injury. (DE 64, Ex. 3). However, on May 8, 2002, Defendant sent Plaintiff to an independent medical examiner, Dr. Matz, who disagreed with the diagnosis of a bulging disc and fissure. Dr. Matz recommended that Plaintiff return to work without limitation or restriction. Plaintiff's worker's compensation benefits were then terminated, and he returned to work in June, about five months after the injury.

After Plaintiff returned to work, he stayed on the job for the next two years. During his two-year return to work, Plaintiff received awards from Defendant for his successful driving record with the company. He also received safe driver awards and received positive work

evaluations. (DE 64, Ex. 4). In March 2004, Plaintiff requested a switch to a city driver position, and his request was granted. However, he was experiencing difficulty getting out of bed, bending over, and sitting in a forklift doing dock work for eight hours a day as a city driver. (DE 38, Ex. 3, Plaintiff's Deposition). Plaintiff then requested a switch back to a road driver. Defendant alleges that it denied Plaintiff's request to switch back to a road driver because the switching procedures did not allow him to transfer before he had spent one year and one day in the new position; that he never completed a board switching request form; and that his treating physician had not placed him on medical restrictions.

In August 2004, Plaintiff's supervisor reprimanded him for working slowly as a result of his back pain. Plaintiff's physician, Dr. Magill, noted in his report that Plaintiff likely had a herniated disc and that Plaintiff complained of pain which prevented him from working. Dr. Magill recommended that Plaintiff discontinue work until further notice. (DE 64, Ex. 6). Defendant placed Plaintiff on leave, and Plaintiff did not forfeit his seniority with the company.

Effective January 3, 2006, Dr. Magill cleared Plaintiff to return to work with the following restrictions: "(1) limit hours of dock work; (2) avoid dock plates as much as possible; (3) tractor needs to be supplied with air seat, suspension, cab; and (4) road driver work only." (DE 64, Ex. 8). Plaintiff presented his restrictions to his supervisor and requested placement as a road driver. Fellow employees informed Plaintiff that Holland had open road driver positions. Plaintiff also indicated he could successfully work in other positions such as a dispatcher.

Defendant required Plaintiff to provide clarification regarding his requested accommodations; however, from this point on the communications broke down. The parties disagree as to who caused a breakdown in the clarification process. Defendant required Plaintiff to see Dr. Troy Bergin, at Wipperman Occupational Health, for a "work/fit for duty evaluation."

(DE 64, Ex. 26). The parties disagree about Dr. Bergin's evaluation of Plaintiff. Plaintiff claims that Dr. Bergin released him to work without restrictions, as indicated by the words "Fit For Duty" which appear on his medical report. (DE 64, Ex. 23). Defendant claims that Dr. Bergin requested more medical records and did not determine whether Plaintiff was able to work. (DE 38, Ex. 4). Defendant claim that Dr. Bergin could not clarify Plaintiff's condition or need for accommodations because Plaintiff's past medical records could not be obtained. Defendant also alleges that Plaintiff personally refused to provide clarification of his restrictions on an accommodation form provided by Defendant.

Plaintiff offers evidence to the contrary. First, Plaintiff, presents the signed medical authorization form that allows Dr. Bergin to obtain his medical records. (DE 64, Ex. 27). Second, Plaintiff presents Dr. Bergin's record, in which the doctor notes that Defendant's Director of Human Resources, Stacey VandeVusse, instructed Dr. Bergin to discontinue evaluation of Plaintiff's ability to work because he had not been cleared to work without restrictions by his own physician. (DE 64, Ex. 22, pp. 26-28, Dr. Bergin's deposition). VandeVusse informed Dr. Bergin that Plaintiff could not be considered for work until he was released without restrictions. (DE 64, Ex. 13). Dr. Troy Bergin's record notes that Vandevusse "actually said that until he [Plaintiff] is released fully, they would not need us to do a return to work evaluation. . . . She said Kurt [Plaintiff's supervisor] is going to call Mr. Powers and let him know that until he is released fully, without restrictions, that they will not return him to work." (DE 64, Ex. 13).

A supervisor did inform Plaintiff that he had to be entirely free from work restrictions before he would be considered for work. Plaintiff's supervisor states in a memorandum to the Human Resources Director that he "would not consider [Plaintiff] for work until his doctor

4

issued a release with no restrictions. Keith stated that he would probably always have restrictions." (DE 64, Ex. 12).

Furthermore, Defendant's Labor Relations Manager Neal London, who has been with the company for thirteen years, stated in his deposition that Defendant's policy requires injured workers to have a medical release with no restrictions before they will be returned to work: "They [injured workers] cannot return to work from an on-the-job injury without full release to return to work." (DE 64, Ex. 17, p. 29). Mr. London affirmed that release to return to work required a medical release with no restrictions. *Id.*

Plaintiff remains on extended leave and has not forfeited his seniority with Defendant.

Currently, Plaintiff is employed at Denham Agri-Center, his father's company, as a warehouse foreman. (DE 38, Ex. 3, p. 18, Excerpts from Plaintiff's Deposition). Plaintiff began work there in late 2005 or early 2006. Plaintiff drives twenty minutes to the family farm and performs tasks such as cleaning bins, running farm equipment, and running the business. Plaintiff described his position as an "all-purpose employee." (DE 38, Ex. 3, p. 55). He also stated that his current work is "more physically demanding" than the work he would be doing for Defendant.

As to his current health, Plaintiff testified in his deposition that he can sit in a chair for at least two hours, has no trouble lying flat or walking. He also stated he can perform household chores and has no problem bathing himself. (DE 38, Ex. 3, p. 154–56).

**B. Discussion**

Summary judgment is proper only if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ.*

*P. 56 (c); Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if there is sufficient evidence such that a "reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the record in the light most favorable to the non-moving party. *Nat'l Soffit & Escutcheons, Inc. v. Superior Systems, Inc.*, 98 F.3d 262, 264 (7th Cir. 1996).

**(1)** *ADA Claims*

Plaintiff is pursuing three types of claims under the ADA: *per se* discrimination, failure to accommodate, and disparate treatment.

**(a)** *Per Se* **Discrimination**

Plaintiff has created a genuine issue of fact as to whether Defendant has a "100% Healed Policy" requiring Plaintiff to be entirely free from medical restrictions before returning to work. Plaintiff's evidence includes a medical record which notes that Defendant's Human Resources Director stopped Dr. Bergin from assessing Plaintiff's potential restrictions; a memorandum from a supervisor indicating Plaintiff would not be considered for work until he was fully released; and the testimony of Defendant's Labor Relations Manager that Defendant has a policy which requires injured workers to have a medical release with no restrictions before they are returned to work.

To require an employee to be released completely without restrictions does not allow for a case-by-case assessment of Plaintiff's ability to perform the essential functions of the job, and can constitute a *per se* violation of the ADA. *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 698 (7th Cir. 1998). ADA regulations forbid employers from using standards or tests that tend to

6

screen out a class of individuals with disabilities. *Id.* at 698. In *Hendricks-Robinson*, the Seventh Circuit found that a requirement for workers to be "physically fit" had the capacity to screen out employees with disabilities and did not provide the individualized assessment required by the ADA. *Id.* The general criterion of physical fitness was not related to any specific job requirement, and the court found that it could constitute *per se* discrimination. *Id.* The court rejected Defendant's argument that the record did not show that any employee was ever laid off or denied a promotion based on the physical fitness requirement. *Id.* at 698.

Here, Plaintiff has presented evidence that Defendant would not assess Plaintiff's ability to perform the essential functions of the job or to return him to work until his physician completely lifted his medical restrictions. Defendant's Labor Relations Manager testified that this requirement applied to all injured employees. Further, Dr. Bergin's record and a supervisor's memorandum each indicate that Plaintiff would not receive an individualized assessment of his capabilities until he received complete medical clearance of all restrictions. A policy which requires all workers to be completely cleared of all work restrictions could function to screen out disabled workers and could be found to violate the ADA. *See Hendricks-Robinson*, 154 F.3d at 699.

**(b) Failure to Accommodate and Disparate Treatment**

For his failure to accommodate and disparate treatment claims, as a threshold matter, Plaintiff must provide enough evidence to create a genuine issue of material fact as to whether he is a qualified individual with a disability under the ADA. *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001). Plaintiff is disabled under the ADA if he has any of the following: "(A) a physical or mental impairment that substantially limits one or more of [his] major life activities .

. . . ; (B) a record of such an impairment; or (C) [has been] regarded as having such an impairment." 42 U.S.C. § 12102(2) (2006). An impairment is a disability only when its impact is permanent or long term. *Brunker v. Schwan's Home Serv.*, 583 F.3d 1004, 1008 (7th Cir. 2009) (multiple sclerosis not a disability where physician returned employee to work without restrictions; employee completed jobs just as quickly; and symptoms, such as dizziness, slurred speech, and difficulty writing occurred only intermittently and infrequently). Examples of intermittent impairments that do not qualify as disabilities under the ADA include "a broken leg, appendicitis, or isolated bouts of depression." *Brunker*, 583 F.3d at 1008.

Plaintiff argues he is a qualified individual with a disability under the ADA because he has an impairment that substantially limits the major life activity of working and that Defendant regarded him as having such an impairment. "Under the ADA, the concepts of 'substantially limits' and 'major life activity' are the same whether the employee is proceeding under a claim that he is actually disabled or regarded as disabled." *Mack v. Great Dane Trailers*, 308 F.3d 776, 782 (7th Cir. 2002). Substantially limited in the major life activity of working means a claimant is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(I).

Plaintiff does not present sufficient evidence he is a qualified individual with a disability under the ADA. First, Plaintiff's evidence as to the permanency of his injury is insufficient. Following his work-related injury in 2002, Plaintiff successfully returned to his job for the next two years. After his condition worsened in 2004 and he went on indefinite leave, he returned to work for his father in late 2005 where he currently completes tasks such as cleaning bins, running equipment, and is performing work that is more physically demanding than his work

with Defendant. Plaintiff testified that he can walk, bathe himself, sit for at least two hours, and perform household chores. Further, Plaintiff presents insufficient evidence that Defendant regarded his injury as permanent or long-term. Defendant discontinued Plaintiff's worker's compensation benefits after an independent medical examiner determined he could return to work; Defendant gave him positive work evaluations and rewards during the two years following the injury; and the record shows only one reprimand by a supervisor for working below the required standard.

Second, Plaintiff presents insufficient evidence that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(I). Plaintiff presents no evidence as to a class of jobs or range of jobs he is unable to perform as a result of his back injury. He relies on his specific limitations noted by his physician to establish his inability to perform a range of jobs, but his work restrictions alone are insufficient. *Contreras v. Suncast Corp.*, 237 F.3d 756, 763 (7th Cir. 2001) (restrictions on lifting in excess of forty-five pounds, engaging in strenuous work, and driving forklift for more than four hours per day were insufficient to establish worker's inability to perform a broad class of jobs).

Since Plaintiff has failed to present sufficient evidence that he is a qualified individual under the ADA, his discrimination claim and the claim for failure to accommodate fail as a matter of law.

**(2)** *Negligent Infliction of Emotional Distress*

Plaintiff also alleges negligent infliction of emotional distress ("NIED"), a supplemental state tort law claim. Under Indiana law, a claim for NIED must meet the modified impact rule.

*Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1264 (Ind. Ct. App. 2002). The modified impact rule requires that the plaintiff suffer a direct or indirect physical impact. *Id.* Although a direct physical impact need not be shown, sufficient evidence of an indirect impact, such as an emotional trauma, is required. Plaintiff offered no evidence of emotional trauma or a physical impact caused by Defendant's failure to accommodate his disability other than cursory claims that the loss of his health benefits caused distress. These allegations alone are insufficient to raise a genuine issue of material fact.

**(3)** *Retaliatory Discharge*

Plaintiff claims he was constructively discharged, in part, because he filed a worker's compensation claim. *Frampton v. Central Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973) recognizes an exception to the employee-at-will doctrine when an employee is terminated in retaliation for exercising a statutorily conferred right. *Id.* at 428. "To survive a motion for summary judgment in a *Frampton* case, an employee must show more than a filing of a worker's compensation claim and the discharge itself." *Powedertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1262 (Ind. Ct. App. 2002). An employee must present direct or indirect evidence that the termination was caused by the filing of a worker's compensation claim. *Id.* Evidence such as proximity in time or evidence that the reason given by the employer for the termination is pretextual can suffice in a *Frampton* case. *Id.*

Plaintiff has presented no evidence that he was terminated for filing a worker's compensation claim. Although Defendant disputes this, the Court will assume that Plaintiff has been constructively discharged by Defendant when he was placed on an extended leave of absence. But in any case, Plaintiff has no evidence that the alleged discharge was in retaliation

for his filing a worker's compensation claim. Plaintiff filed his worker's compensation claim in January 2002 after his injury and returned to work in June. Plaintiff remained at work for the next two years. In August 2004, Plaintiff's physician took him off work until further notice. Plaintiff did not seek reinstatement with accommodations until December 2005, nearly four years after the filing of his worker's compensation claim. The time lapse of four years between the filing of the worker's compensation claim and the alleged constructive discharge is insufficient evidence of a *Frampton* retaliatory discharge. *See Goetzke v. Ferro Corp.,* 280 F.3d 766, 775 (7th Cir. 2000) (holding that a one-year lapse between filing for benefits and discharge does not support an inference of retaliatory intent and noting that in analogous Title VII cases, a long time lapse between discharge and the protected activity is counter-evidence of the causal connection). Without any other evidence, Plaintiff's retaliatory discharge claim fails as a matter of law.

## C. Conclusion

Defendant's motion for summary judgment on the claim of *per se* discrimination under the ADA is DENIED, and Defendant's motion for summary judgment on the remaining ADA claims, the state law claims of negligent infliction of emotional distress and the claim of *Frampton* retaliatory discharge is GRANTED.

SO ORDERED on February 9, 2010.

<u>s/ Joseph S. Van Bokkelen</u>
Joseph S. Van Bokkelen
United States District Judge