# United States District Court
# Northern District of Indiana
# Hammond Division

| | |
|---|---|
| KEITH POWERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:07-CV-246 JVB |
| v. ) | |
| ) | |
| USF HOLLAND, INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

**A. Background**

Plaintiff Keith Powers alleged that his employer, USF Holland, Inc., violated the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et. seq., by failing to provide him with reasonable accommodations after he suffered a back injury. Plaintiff claimed that Defendant violated the ADA by both enforcing a 100% healed policy and by discriminating against him on the basis of his disability. Plaintiff also brought state law claims of negligent infliction of emotional distress and retaliatory discharge. Finding that there were genuine issues of material fact, the Court denied Defendant's motion for summary judgment on Plaintiff's claim that Defendant maintains a 100% healed policy, but ruled for Defendant as a matter of law on his remaining claims. The Court based its rulings on the following facts:[1]

Defendant is a freight transportation company operating terminals throughout the United States, including one in South Bend, Indiana. Defendant is an employer pursuant to Title VII of the Civil Rights Act of 1964, as amended, and pursuant to 42 U.S.C. § 12111(5)(A).

Plaintiff began his employment with Defendant as a truck driver at the South Bend

---

[1] The Court incoporates the finding of facts from its February 9, 2009, Order.

Terminal in the spring of 1999. There are two types of truck driver classifications at the South Bend terminal: road drivers and city drivers. City drivers remain within a one-hundred mile radius of the South Bend terminal and also perform dock work. Dock work involves loading freight into and out of the trucks with a forklift. Road drivers also load freight with forklifts, but they drive longer distances across state lines.

On January 19, 2002, Plaintiff drove a company truck over a rough patch of road on Interstate 90 and injured his back. Plaintiff experienced pain in his spine, and numbness and tingling in his right leg. Plaintiff sought treatment in a hospital emergency room. Plaintiff's physicians gave various diagnoses including bulging, herniated discs, and an associated annular fissure at the L5-S1 level of his lumbar spine. Plaintiff reported his injury to Defendant and filed a claim for worker's compensation benefits, which he received. A record written by worker's compensation case manager Ray Ananea states that the "loss is compensable—Employer does not question back injury. . . . Emplyr [sic] states this is a common description they see." (DE 64, Ex. 35, at D0168). Defendant classified Plaintiff's status as off work due to a work-related injury. (DE 64, Ex. 3). However, on May 8, 2002, Defendant sent Plaintiff to an independent medical examiner, Dr. Matz, who disagreed with the diagnosis of a bulging disc and fissure. Dr. Matz recommended that Plaintiff return to work without limitation or restriction. Plaintiff's worker's compensation benefits were then terminated, and he returned to work in June, about five months after the injury.

After Plaintiff returned to work, he stayed on the job for the next two years. During his two-year return to work, Plaintiff received awards from Defendant for his successful driving record with the company. He also received safe driver awards and received positive work

evaluations. (DE 64, Ex. 4). In March 2004, Plaintiff requested a switch to a city driver position, and his request was granted. However, he was experiencing difficulty getting out of bed, bending over, and sitting in a forklift doing dock work for eight hours a day as a city driver. (DE 38, Ex. 3, Plaintiff's Deposition). Plaintiff then requested a switch back to a road driver. Defendant alleges that it denied Plaintiff's request to switch back to a road driver because the switching procedures did not allow him to transfer before he had spent one year and one day in the new position; that he never completed a switching request form; and that his treating physician had not placed him on medical restrictions.

In August 2004, Plaintiff's supervisor reprimanded him for working slowly as a result of his back pain. Plaintiff's physician, Dr. Magill, noted in his report that Plaintiff likely had a herniated disc and that Plaintiff complained of pain which prevented him from working. Dr. Magill recommended that Plaintiff discontinue work until further notice. (DE 64, Ex. 6). Defendant placed Plaintiff on leave, and Plaintiff did not forfeit his seniority with the company.

Effective January 3, 2006, Dr. Magill cleared Plaintiff to return to work with the following restrictions: "(1) limit hours of dock work; (2) avoid dock plates as much as possible; (3) tractor needs to be supplied with air seat, suspension, cab; and (4) road driver work only." (DE 64, Ex. 8). Plaintiff presented his restrictions to his supervisor and requested placement as a road driver. Fellow employees informed Plaintiff that Holland had open road driver positions. Plaintiff also indicated he could successfully work in other positions such as a dispatcher.

Defendant required Plaintiff to provide clarification regarding his requested accommodations; however, from this point on the communications broke down. The parties disagree as to who caused a breakdown in the clarification process. Defendant required Plaintiff

3

to see Dr. Troy Bergin, at Wipperman Occupational Health, for a "work/fit for duty evaluation." (DE 64, Ex. 26). The parties disagree about Dr. Bergin's evaluation of Plaintiff. Plaintiff claims that Dr. Bergin released him to work without restrictions, as indicated by the words "Fit For Duty" which appear on his medical report. (DE 64, Ex. 23). Defendant claims that Dr. Bergin requested more medical records and did not determine whether Plaintiff was able to work. (DE 38, Ex. 4). Defendant claims that Dr. Bergin could not clarify Plaintiff's condition or need for accommodations because Plaintiff's past medical records could not be obtained. Defendant also alleges that Plaintiff personally refused to provide clarification of his restrictions on an accommodation form provided by Defendant.

Plaintiff offers evidence to the contrary. First, Plaintiff, presents the signed medical authorization form that allows Dr. Bergin to obtain his medical records. (DE 64, Ex. 27). Second, Plaintiff presents Dr. Bergin's record, in which the doctor notes that Defendant's Director of Human Resources, Stacey VandeVusse, instructed Dr. Bergin to discontinue evaluation of Plaintiff's ability to work because he had not been cleared to work without restrictions by his own physician. (DE 64, Ex. 22, pp. 26-28, Dr. Bergin's deposition). VandeVusse informed Dr. Bergin that Plaintiff could not be considered for work until he was released without restrictions. (DE 64, Ex. 13). Dr. Troy Bergin's record notes that Vandevusse "actually said that until he [Plaintiff] is released fully, they would not need us to do a return to work evaluation. . . . She said Kurt [Plaintiff's supervisor] is going to call Mr. Powers and let him know that until he is released fully, without restrictions, that they will not return him to work." (DE 64, Ex. 13).

A supervisor did inform Plaintiff that he had to be entirely free from work restrictions

4

before he would be considered for work. Plaintiff's supervisor states in a memorandum to the Human Resources Director that he "would not consider [Plaintiff] for work until his doctor issued a release with no restrictions. Keith stated that he would probably always have restrictions." (DE 64, Ex. 12).

Furthermore, Defendant's Labor Relations Manager Neal London, who has been with the company for thirteen years, stated in his deposition that Defendant's policy requires injured workers to have a medical release with no restrictions before they will be returned to work: "They [injured workers] cannot return to work from an on-the-job injury without full release to return to work." (DE 64, Ex. 17, p. 29). Mr. London affirmed that release to return to work required a medical release with no restrictions. *Id.*

Plaintiff remains on extended leave and has not forfeited his seniority with Defendant.

Currently, Plaintiff is employed at Denham Agri-Center, his father's company, as a warehouse foreman. (DE 38, Ex. 3, p. 18, Excerpts from Plaintiff's Deposition). Plaintiff began work there in late 2005 or early 2006. Plaintiff drives twenty minutes to the family farm and performs tasks such as cleaning bins, running farm equipment, and running the business. Plaintiff described his position as an "all-purpose employee." (DE 38, Ex. 3, p. 55). He also stated that his current work is "more physically demanding" than the work he would be doing for Defendant.

As to his current health, Plaintiff testified in his deposition that he can sit in a chair for at least two hours, and has no trouble lying flat or walking. He also stated he can perform household chores and has no problem bathing himself. (DE 38, Ex. 3, p. 154–56).

## B. Parties' Contentions

In ruling on the Defendant's motion for summary judgment, the Court found that Plaintiff did not create a genuine issue of material fact as to his alleged disability and that he was not disabled as a matter of law. The Court, however, found genuine issues of material fact on the question of whether Defendant denied reasonable accommodations to Plaintiff as a result of the alleged 100% healed policy.

Defendant now asks the Court to reconsider the partial denial of summary judgment. Defendant contends that Plaintiff lacks standing to challenge the alleged 100% healed policy because the Court has found him not to be a qualified individual with a disability. Defendant submits that Plaintiff must establish that he is disabled before he is allowed to challenge Defendant's policies.[2]

Plaintiff responds by arguing that the ADA Amendments Act of 2008 (ADAAA), which took effect on January 1, 2009, overruled cases that required a plaintiff to show that he was a qualified individual with a disability in order to maintain a per se discrimination claim. Plaintiff also insists that he should at least be allowed to proceed to trial on Defendant's actions since January 1, 2009.

## C. Discussion

Because Plaintiff has failed to create a genuine issue of material fact that he is a qualified individual with a disability, his per se discrimination claim against Defendant fails as a matter of law. Defendant's failure to provide Plaintiff with accommodations before January 1, 2009, is not controlled by the ADAAA as the amendments are not retroactive. *Fredricksen v. United Parcel*

---

[2]Defendant did not raise the issue of standing in its original briefs. While generally, this precludes a party from raising such issues later, for the sake of efficiency, the Court allows Defendant's motion for reconsideration.

*Service, Co.*, 581 F.3d 516, 521 n.1 (7th Cir. 2009) ("Significant changes to the ADA took effect on January 1, 2009, after this appeal was filed. . . . Congress did not express its intent for these changes to apply retroactively, and so we look to the law in place prior to the amendments.") (citing *Lytes v. DC Water & Sewer Auth.*, 572 F.3d 936, 939-42 (D.C. Cir.2009). The cases before the amendments required that the plaintiff show disability before pursuing a per se discrimination case. *See Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 195–96 (per se discrimination for a 100% healed policy requires that plaintiff be "disabled" or "otherwise qualified" under the ADA); *Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001) ("We agree with the district court's interpretation that [plaintiff] does not have standing to challenge [defendant's] accommodation policy, in that he is not a qualified person with a disability."); *Stuckey v. City of Naperville*, 1998 WL 173298, 4 (N.D. Ill. April 7, 1998) (a showing of disability is a prerequisite for pursing a claim against defendant's discriminatory policies). Accordingly, Defendant's failure to accommodate Plaintiff before January 1, 2009, did not violate the ADA.

Plaintiff does not fare any better under the ADAAA. Plaintiff fails to cite to any case showing that the ADAAA has changed the law about the standing requirements for per se discriminations claims. Instead, Plaintiff argues that under the ADAAA he satisfies the standing requirement because, insofar as Defendant regarded him as disabled and subjected him to the 100% healed policy, he meets the definition of disability under the "being regarded as" prong of the Act. At first blush, Plaintiff's argument seems to have merit:

> (1) Disability
>  The term "disability" means, with respect to an individual—
>
> (A) a physical or mental impairment that substantially limits one or more major life

7

activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment (as described in paragraph (3)).
. . .

(3) Regarded as having such an impairment

For purposes of paragraph (1)(C):

(A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

(B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 U.S.C. § 12102(1) & (3).

On its face, the text of paragraph 1(C), in conjunction with paragraph 3(A), appears to support Plaintiff, but his interpretation is rejected by the statute itself, in a later section:

(h) Reasonable accommodations and modifications

A covered entity under subchapter I of this chapter, a public entity under subchapter II of this chapter, and any person who owns, leases (or leases to), or operates a place of public accommodation under subchapter III of this chapter, need not provide a reasonable accommodation or a reasonable modification to policies, practices, or procedures to an individual who meets the definition of disability in section 12102(1) of this title solely under subparagraph (C) of such section.

42 U.S.C. 12201(h).

Therefore, even if Plaintiff were to meet the definition of disability under 42 U.S.C. § 12102(1)(C), he is not entitled to accommodation from Defendant. By excluding the requirement to accommodate individuals who are only regarded as disabled, the ADAAA recognizes the

8

obvious: if an individual is not actually disabled, then he or she does not need the accommodation in the first place. Thus, while an employer may not discriminate against persons it perceives as disabled, the law does not impose a duty upon that employer to accommodate what turns out to be a fictional impairment.

The same applies to Plaintiff. Plaintiff claims that Defendant has engaged in per se discriminatory practices and has failed to provide reasonable accommodations for him, that is, to give him the job of over the road truck driver under the conditions specified by his doctor. Since Plaintiff has failed to show that he has an actual disability or a record of such disability, he may not insist upon the accommodation, even if Defendant regarded him as disabled at some point. Therefore, Plaintiff's claim against Defendant's alleged policy of per se discrimination fails as a matter of law under the ADAAA.

**C. Conclusion**

Having previously determined that Plaintiff is not a qualified individual with a disability under the ADA, the Court finds that Plaintiff lacks standing to bring a per se discrimination claim against Defendant both under the law as it existed before and after January 1, 2009. To be protected by the ADA and to challenge Defendant's failure to accommodate him as a result of the alleged 100% healed policy, Plaintiff must be a qualified individual with disability under the Act. Accordingly, the Court grants Defendant's Motion for Reconsideration (DE 82); furthermore, the Court grants summary judgment in favor of Defendant on Plaintiff's remaining claim of *per se* discrimination under the ADA. The Clerk is directed to enter final judgment for Defendant on all of Plaintiff's claims.

SO ORDERED on May 13, 2010.


   S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE